### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. H-04-375 |
| | § | (Civil Action No. H-08-2968) |
| TAJ KAREEM SMITH | § | |

## MEMORANDUM AND ORDER

Defendant Taj Kareem Smith, through his attorney, filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 ("Defendant's Motion" or "§ 2255 Motion") [Doc. # 115], which he later supplemented with his affidavit [Doc. # 117]. The United States filed a Response [Doc. # 119], and Defendant filed a Reply [Doc. # 120]. The Court has carefully reviewed all pertinent matters in this criminal case. Based on this review, the Court's clear recollection of the case, and the application of governing legal authorities, the Court **denies** Defendant's § 2255 Motion and **dismisses** the corresponding civil action (H-08-2968) for the reasons set forth below.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Smith was charged in a three-count Indictment [Doc. # 1] returned August 19, 2004. In Count 1, Smith was charged with possession with intent to distribute between one and three kilograms of phencyclidine ("PCP"). In Count 2, Smith was

charged with possessing a firearm (a semiautomatic assault weapon) in furtherance of a drug trafficking offense, and in Count 3 Smith was charged with possessing the firearm after having been convicted of a felony.  Smith entered a plea of not guilty to each count and requested appointment of counsel.  The United States Magistrate Judge appointed the Federal Public Defender to represent Smith.  Subsequently, Smith retained Steven Jay Rozan to represent him, and Rozan was substituted as Smith's attorney.

Smith's trial began on June 6, 2005.  The United States presented evidence that police officers executed a search warrant for an apartment in Houston, Texas, and an arrest warrant for Smith.  During the search of the apartment, officers found bottles under the sink.  Two of the bottles together contained 1.4 kilograms of liquid PCP.  Behind the bottles were small plastic vials, and a loaded rifle was found behind the living room sofa.  The trial ended in a mistrial, requested by Smith, after the Court noted (outside the presence of the jury) that the prosecutor had misconstrued the record during closing argument.

Smith's second trial began June 8, 2005.  During the second trial, the United States presented additional evidence regarding Smith having been observed engaging in narcotics transactions a few days before the warrants were executed, that the small plastic vials could be used for distributing the PCP, and that Smith had two prior

convictions for selling cocaine base ("crack").  The jury found Smith guilty on all three counts.

The Court sentenced Smith to life imprisonment on Count 1, a consecutive term of imprisonment of sixty (60) months on Count 2, and a concurrent term of imprisonment of 120 months on Count 3.

Smith filed a timely notice of appeal.  The United States Court of Appeals for the Fifth Circuit affirmed Smith's conviction and sentence.  *See United States v. Smith*, 228 F. App'x. 383 (5th Cir.), *cert. denied*, 128 S. Ct. 366 (2007).

Smith then filed this timely § 2255 Motion, in which he asserts that his attorney was constitutionally ineffective when he failed to "object during the first trial in light of the prosecution's goading the defense into seeking a mistrial" (Claim 1), failed to prepare for trial (Claim 3), and failed to compel the testimony of Schamika Satchel and failed to ask for a writ of attachment for a witness under subpoena (Claim 4). Smith also claims that the United States engaged in prosecutorial misconduct during the first trial (Claim 2) and that the Court violated Smith's due process rights by "forcing him to accept a mistrial" (Claim 5).

## II.    APPLICABLE LEGAL STANDARDS

### A.    Standard of Review for Section 2255 Motions

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a petitioner "must clear a significantly higher hurdle" than the standard that would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).   When a defendant has been convicted and his conviction has been upheld on direct appeal, there is a presumption that the defendant's conviction is fair and final.  *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998).  "As a result, review of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice."  *Id.*  Of course, this procedural bar does not apply to claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel.  *See Massaro v. United States*, 538 U.S. 500 (2003) (holding that ineffective-assistance claims are properly raised on collateral review and not procedurally barred by a failure to raise them on direct appeal).

### B.    Legal Standard for Ineffective Assistance of Counsel Claims

The Sixth Amendment guarantees criminal defendants the effective assistance of counsel.  *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  Claims for ineffective assistance of counsel are analyzed under the well-settled standard set forth in

*Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally-deficient performance by counsel and actual prejudice as a result of the alleged deficiency.  *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000).  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable."  *Strickland*, 466 U.S. at 687.

Counsel's performance is constitutionally deficient if it falls below an objective standard of reasonableness.  *See United States v. Molina-Uribe*, 429 F.3d 514, 518 (5th Cir. 2005), *cert. denied*, 547 U.S. 1041 (2006).  Scrutiny of counsel's performance must be "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* (quoting *Strickland*, 466 U.S. at 689).  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id*.  An attorney's failure to make meritless arguments does not demonstrate deficient performance and cannot form the basis for relief under § 2255.  *See United States v. Kimler*, 167 F.3d 889, 892 (5th Cir. 1999).

To prove prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Harris*, 408 F.3d 186, 189 (5th Cir.) (quoting *Strickland*, 466 U.S. at 694), *cert. denied*, 546 U.S. 919 (2005).

## III.   ANALYSIS OF CLAIMS

### A.     Claims Relating to Mistrial

Smith argues together his first two claims – that his attorney was ineffective for failing to object to the prosecutor's "goading the defense into seeking a mistrial" (Claim 1) and that the United States engaged in prosecutorial misconduct[1] by arguing outside the record and "goading the defense into seeking a mistrial" (Claim 2).  He also asserts that the Court violated his due process rights by granting the mistrial (Claim 5).  None of these mistrial-related claims provides a basis for the relief Smith seeks in his § 2255 Motion.[2]

The prosecutor made statements during his closing argument that the Court interpreted as representing direct evidence in the record, rather than an argument that

---

[1]     The prosecutorial misconduct claim could have been raised on direct appeal.  It was not raised and, as a result, is procedurally barred.  Nonetheless, the Court will address the merits of the claim.

[2]     Smith argued on direct appeal that this Court violated his rights under the Double Jeopardy Clause by retrying him after granting his motion for a mistrial.  The Fifth Circuit rejected the argument, holding that the "district court committed no error, plain or otherwise, by granting Smith's request for a mistrial and then retrying him." *Smith*, 228 F. App'x. at 389.

the jury should draw the *inference* that the statements were true based on other evidence in the record.  For example, in support of his argument that Smith stayed at the apartment, the prosecutor argued that men's clothes found at the apartment belonged to Smith and were the "majority" of his clothes.  Although there was evidence that men's clothes were found in the same bedroom as Smith's Texas identification card, his Texas Department of Corrections identification card, and a prescription pill bottle with his name on the prescription label, there was no direct testimony that the clothes belonged to Smith or constituted the "majority" of his clothes.  Additionally, there was some confusion regarding whether the color of certain liquids and bottle labels was accurately depicted in crime scene photographs.

The Court did not believe, and there was no basis for defense counsel to believe, that the Assistant United States Attorney was engaging in prosecutorial misconduct.  Smith relies on the Supreme Court's decision in *Oregon v. Kennedy*, 456 U.S. 667 (1982), to support his prosecutorial misconduct claim.  In *Oregon*, however, the Supreme Court held that only if "the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion."  *Id*. at 676.  In this case, there is nothing to suggest that the prosecutor was attempting to "goad" Smith into moving for a mistrial.  Indeed, it was the Court

that first suggested a motion for mistrial and the government objected to granting Smith's motion.[3]  As noted, the mistrial was granted based on the Court's perception that some of the prosecutor's statements could be interpreted as describing actual evidence in the record.  Although defense counsel, if he shared the Court's perception of the prosecutor's statements during closing argument, could have objected, failing to do so did not rise to the level of constitutionally ineffective assistance of counsel.

Moreover, it is abundantly clear from the record that neither the prosecutor nor the Court goaded, forced, or otherwise coerced Smith to request a mistrial.  The Court discussed with counsel whether a mistrial could be avoided by giving the jury a curative instruction, but the parties were unable to agree on appropriate language for such an instruction.  The Court suggested giving each attorney five or ten minutes of additional closing argument to clear up any misperception caused by the prosecutor's statements, but neither attorney agreed to that suggestion.   The Court stated unequivocally that "if the defendant doesn't want a mistrial and would rather take his

---

[3]        Although the Court initially believed the prosecutor had misconstrued the record, the prosecutor explained to the Court's satisfaction the evidentiary basis for his argument.  For example, the prosecutor explained that a "military" rifle (the term he used during closing argument) and an "assault" rifle (the term used in the trial testimony) were both accurate terms to describe the firearm found in the apartment.  Having listened to and considered the prosecutor's explanations, the Court determined that there had been no intentional misrepresentation of the evidence.

chances going to the jury on the record here [plus the jury instructions], the defendant has a right to make that choice." *See* Trial Transcript, June 7, p. 115.  The Court also gave Smith and defense counsel several opportunities to discuss at length whether Smith wanted to have the jury from the first trial decide the case or preferred to move for a mistrial and have the case retried.  As further verification, the Court asked whether Smith objected to the Court granting his earlier motion for a mistrial and defense counsel answered "no, Your Honor." *Id.* at 131.

Smith argues prejudice from the mistrial and bases Claim 5 on the mistaken position that the United States failed to present sufficient evidence during the first trial to support a conviction.  Smith's expressed belief that he would have been acquitted by the first jury or, alternatively, that any conviction by the first jury would have been reversed on appeal is wishful thinking and is not supported by the record.  The United States presented sufficient evidence during the first trial to support a conviction and, therefore, the Court denied Smith's motion for judgment of acquittal.  A Rule 29 motion is properly granted only if the "evidence is insufficient to sustain a conviction." *See* FED. R. CRIM. P. 29.  There is nothing in Rule 29 that would permit a trial court to grant a judgment of acquittal based only on what it perceives as "sloppy" presentation of the evidence if, as here, the evidence -- however sloppily presented -- is adequate to sustain a conviction.

Smith has failed to show inadequate representation by his counsel or prejudice from the mistrial.  Smith has failed to show prosecutorial misconduct or a denial of due process resulting from the mistrial.  His claims for § 2255 relief based on the mistrial (Claims 1, 2, and 5) are all denied.

### B.   Other Ineffective Assistance of Counsel Claims

Smith also claims that his retained trial counsel was constitutionally ineffective because he failed to prepare for trial (Claim 3) and failed to compel the testimony of Schamika Satchel (Claim 4).

With reference to the claim that trial counsel failed to prepare for trial, Smith comments in his § 2255 Motion that counsel had not discussed whether Smith would testify, but there is no indication anywhere in the record that Smith wanted to testify. Smith asserts in his Motion that his attorney told him he should plead guilty, but in his affidavit Smith states that, after his attempts to cooperate with law enforcement authorities were unsuccessful, his attorney told him "we should get ready for trial."

Smith claims that he told his counsel that the PCP found in the apartment had been left there by a friend (Davion Washington) without Smith's knowledge, but counsel failed to investigate.  The Court notes that Smith argued on direct appeal that there was insufficient evidence that he knowingly possessed the PCP found at the apartment. *See Smith*, 228 F. App'x. at 386.  The Fifth Circuit disagreed, holding that

there was sufficient circumstantial evidence to support a plausible inference that Smith knew the PCP was in the apartment.  *See id.* at 387.  Moreover, Smith states later in his affidavit that Washington went "back to California" and there is no indication that Smith knew how to find him.  Smith also states in his affidavit that he told the investigating law enforcement officers everything he knew (which presumably included telling them that Washington left the PCP at the apartment) but that the agents determined that the telephone numbers Smith provided were no longer in service.  Smith also fails to show that Washington would have been willing to testify in Smith's behalf if located and subpoenaed.  Indeed, there is nothing to indicate that Washington would have been willing to incriminate himself by testifying that he placed in excess of one kilogram of PCP in the apartment with or without Smith's knowledge.  Smith has failed to show that counsel could have conducted a more thorough investigation or that the result of his trial would have been different had a more thorough investigation been conducted.

With reference to the claim that counsel was constitutionally ineffective for failing to compel Schamika Satchel to testify, Smith states repeatedly throughout his affidavit that counsel viewed Satchel as the "government's star witness" and believed that her testimony would be damaging to Smith.  It would not be deficient representation not to compel testimony that would harm the client's defense.

Moreover, the prosecutor and his agent both advised defense counsel and the Court that Ms. Satchel had been charged criminally in state court and would not testify if called. As a result, there is no indication that forcing Ms. Satchel into the courtroom would have provided any benefit to Smith.

Smith has failed to show that he received deficient representation from his attorney or that he suffered prejudice from any alleged deficiencies. As a result, Smith has not shown that he received constitutionally ineffective assistance of counsel and his § 2255 Motion based on these two claims is denied.

## V.   <u>CERTIFICATE OF APPEALABILITY</u>

Defendant's § 2255 motion is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2253. Thus, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the defendant makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires the defendant to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).   Under the controlling standard, this requires the defendant to show "that reasonable jurists could debate whether (or, for that matter, agree that) the [§ 2255 Motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"   *Miller-El*, 537 U.S. at 336.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).   After carefully considering the entire record of the criminal proceeding, the Court concludes that jurists of reason would conclude without debate that Smith has not stated a valid claim for relief under § 2255.   Accordingly, a certificate of appealability will not issue.

## VI.    CONCLUSION AND ORDER

Because Defendant has failed to establish an error of constitutional or jurisdictional magnitude, he is not entitled to relief under 28 U.S.C. § 2255. Based on the foregoing, the Court **ORDERS** as follows:

1.    Defendant's § 2255 motion [Doc. # 115] is **DENIED**, and the corresponding civil action (H-08-2968) is **DISMISSED** with prejudice.

2.    A certificate of appealability from this decision is **DENIED**.

The Court will issue a separate Final Order.

The Clerk will provide a copy of this Memorandum and Order to the parties and will file a copy in Civil Action No. H-08-2968.

SIGNED at Houston, Texas, this 18th day of **February, 2009**.

Nancy F. Atlas
United States District Judge